276 F.2d 308
 Roy HYATT and A. E. Ward, Partners, doing business as Hyatt
and Ward Livestock Commission Company, Petitioners,
v.
UNITED STATES of America and Ezra Taft Benson, Secretary of
Agriculture, Respondents.
 No. 6084.
 United States Court of Appeals Tenth Circuit.
 Feb. 23, 1960.
 
 Harold LeVander, So. St. Paul, Minn (Jack N. Hays, Tulsa, Okl., and John R. Evans, Denver, Colo., of counsel), for petitioners.
 Neil Brooks, Assistant General Counsel, United States Department of Agriculture, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Attorney, Department of Justice and Donald A. Campbell, Attorney, United States Department of Agriculture, Washington, D.C., on briefs), for respondents.
 
 
 1
 Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.
 
 
 2
 CHRISTENSON, District Judge.
 
 
 3
 This proceeding comes before us pursuant to 5 U.S.C.A. 1031 et seq. on a petition to obtain judicial review of an order of the Judicial Officer in the United States Department of Agriculture, acting for the Secretary, by which petitioners were required to cease and desist from certain practices alleged by respondents to have been illegal under the Packers and Stockyards Act, 1921, 42 Stat. 159, 7 U.S.C.A. 181 et seq.,[1] and which suspended the petitioners for a period of twenty days as registrants under the act.
 
 
 4
 The Packers and Stockyards Act regulates, among other things, the marketing of livestock at those stockyards which are 'posted' by the Secretary of Agriculture, that is, determined to be within the statutory definition of a stockyard under 7 U.S.C.A. 202(a). The act prohibits a market agency or dealer from engaging in business at a posted stockyard unless registered with the Secretary. 7 U.S.C.A. 203.
 
 
 5
 The Secretary is authorized, after notice and hearing, to order a market agency or dealer to cease and desist from continuing any practice which is violative of the act, and he may issue an order suspending a registrant for a reasonable specified period. 7 U.S.C.A. 203, 211, 213. See also 7 U.S.C.A. 210(a, c).
 
 
 6
 The Judicial Officer, after notice and hearing, made numerous findings of fact. 17 Agr.Dec. 1122 et seq. Some of the charges against the petitioners were not sustained, but as the foundation for the cease and desist order and the order of suspension complained of by petitioners, the Judicial Officer found in substance as follows:
 
 
 7
 On twenty-three different occasions during the period January 1, 1955 to June 18, 1955, inclusive, petitioner A. E. Ward purchased livestock, principally hogs, at the Tahlequah Sales Barn in Tahlequah, Oklahoma, concerning which incorrect records were kept. The animals so purchased were consigned by Ward to the Hyatt and Ward Livestock Commission Company at Tulsa, Oklahoma, for sale on a commission basis, under the incorrect name of D. F. Singleton, as owner. The livestock were hauled by Singleton from Tahlequah, Oklahoma, to the Tulsa Stockyards, Tulsa, Oklahoma, and were sold by the Hyatt and Ward Livestock Commission Company under the incorrect name of D. F. Singleton, as owner. The Hyatt and Ward Livestock Commission Company issued checks on its custodial account to D. F. Singleton in payment of the proceeds from the sale of the livestock, but the checks were endorsed by Ward who also endorsed the name of the payee D. F. Singleton. Ward retained, for his personal account, the proceeds of the checks. Singleton, however, received a check from the company in payment for hauling the livestock from Tahlequah, Oklahoma, to the stockyards. Singleton's name was incorrectly listed on the drivein records and scale tickets at the Tulsa Stockyards as the owner of the livestock, and the Hyatt and Ward Livestock Commission Company issued false or incorrect accounts of sale with respect to such livestock by listing D. F. Singleton as the owner.[2]
 
 
 8
 It was further found and concluded by the Judicial Officer that A. E. Ward was the owner of the livestock acquired at the Tahlequah Sales Barn; that the petitioners caused the stockyard to issue incorrect drive-in records and incorrect scale tickets with respect to livestock; that the petitioners made false or incorrect records with respect to the name of the owner; and that they used their 'Custodial Account for Shippers' Proceeds' in connection with the speculative operations of petitioner A. E. Ward. The evidence, in the view of the Judicial Officer, failed to establish that any transactions prejudiced the interest of other consignors and, accordingly, it was concluded that the transactions were not violative of Section 201.60(b) of the regulations, 9 CFR 201.60(b).[3] But the Judicial Officer concluded that the petitioners had violated the act and the regulations requiring the making and keeping of true and correct records, and with respect to the use of 'Custodial Account for Shippers' Proceeds.'
 
 
 9
 Findings complained of also relate to the acquisition of livestock from E. A. Boatright, Warner Borum (Warner Ranch), Roger Stebbins, Elbert Couch, L. M. Christian, E. Christian and Walter Sears, in transactions characterized as 'country purchases.' In these transactions it was found that petitioner Roy Hyatt purchased or agreed to purchase the livestock for his own account, but conducted and recorded them as if the country owners had shipped the livestock to the Hyatt and Ward Livestock Commission Company for sale on a commission basis. Accordingly, it was concluded that the charging of selling commissions to the country sellers and the charging of yardage fees and other fees were in wilful violation of the act, 7 U.S.C.A. 205, 208, 213(a).[4] Moreover, it was found by the Judicial Officer that petitioners' records were incorrect or false also with respect to these transactions. The use of the custodial account to finance the country operations of Roy Hyatt was found to constitute still a further violation.
 
 
 10
 It was concluded by the Judicial Officer that a cease and desist order should be issued in respect of the determined violations, the form of which is not questioned except as unwarranted by the evidence. He found that in 1954 petitioners by consent disposition were ordered to cease and desist from certain violations similar to those involved here. A suspension of the registration was withheld in the former proceeding 'unless respondents (petitioners here) should be found, after opportunity for a hearing, to have again violated the act or the regulations within two years.' By reason of this circumstance and the findings and conclusions arrived at in the present proceedings, it was concluded that the petitioners should be suspended as registrants for twenty days, but the effectiveness of this suspension was stayed by the Judicial Officer pending the outcome of this appeal.
 
 
 11
 The hearings within the agency were regularly and lawfully conducted. It is not questioned but that the petitioners' operations fell within the scope of the act,[5] and the competency of the Judicial Officer to act for the Secretary is not disputed. The sole complaint made here is that the evidence was insufficient to support the findings and conclusions of the Judicial Officer or to justify his order.
 
 
 12
 The scope of judicial review is limited to the record in the administrative proceeding; and the findings and order by the Judicial Officer must be sustained if supported by substantial evidence on the record as a whole and if not contrary to law. Berigan v. United States, 8 Cir., 1958, 257 F.2d 852. See also National Labor Relations Board v. Cold Spring Granite Co., 8 Cir., 1953, 208 F.2d 163; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The court is not to substitute its judgment for that of the agency concerning which of various rational but opposed inferences should be drawn from the evidence. Corn Products Refining Co. v. Federal Trade Comm., 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320; National Labor Relations Board v. Southern Bell Tel. & Tel. Co., 319 U.S. 50, 63 S.Ct. 905, 87 L.Ed. 1250; 4 Davis, Administrative Law, 29.05 (1958).
 
 
 13
 No good purpose would be served by reviewing in detail the evidence before the administrative agency. We are of the opinion that the disputed findings and conclusions of the Judicial Officer are abundantly supported on the record as a whole.
 
 
 14
 Petitioners have advanced several explanations or excuses for the form in which the records were kept and for the manner in which they used the custodial account. These range from the contention that the substance of the transactions was not as the Judicial Officer found, to the contention that even though it were, the use of the custodial account to pay expenses and to remit the balance in the account to one of the petitioners as the real party in interest, would not be improper or in violation of the act. They also point out that the Judicial Officer did not sustain the department's original contention that the livestock was sold in competition with other consigned livestock. A practice or transaction that 'hurts no one,' they contend, should not be made the basis of disciplinary action.
 
 
 15
 But the unassailable findings to the effect that false or incorrect records were kept in the respects determined by the Judicial Officer render unconvincing or immaterial the other arguments of petitioners which are unsupported by citation of any authority and which disregard the broad purposes of the statute.
 
 
 16
 One of the important and essential means in the accomplishment of the purposes of the Packers and Stockyards Act is to require market agencies to keep such accounts, records and memoranda as will fully and correctly disclose all transactions involved in their handling of livestock. As was indicated in Interstate Commerce Comm. v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729, if an administrative agency is to perform successfully its duties in respect to reasonable rates, undue discriminations and favoritism, it must be informed as to the business of those subject to regulation, and their records must fully and correctly disclose the transactions in which they engage.
 
 
 17
 Accepting the findings that the records with respect to both the Singleton and the 'country transactions' were not true records, the act was clearly violated.[6] There was also sufficient evidence to sustain the finding that commissions and other fees were improperly charged on 'country transactions' where no corresponding services were performed, independent of the question unresolved by the Judicial Officer as to when title to the livestock passed.[7]
 
 
 18
 The petitioners had been ordered to establish and maintain the custodial account by reason of prior difficulties, pursuant to 9 CFR 201.42.[8] Petitioners used the custodial account to finance personal business, not in an isolated transaction, but in a series of deals the true nature of which was not revealed by their records. It is true that after withdrawals from the custodial account, found to have been made for purposes not contemplated by the regulations, prompt reimbursement of the account unfailingly was made by company checks. This, however, did not regularize the initial withdrawals and we do not think that the Judicial Officer was wrong in his conclusion that they were in violation of the regulations under the circumstances.
 
 
 19
 The suspension of petitioners' registration by order of the Judicial Officer was for twenty days. In view of their prior violations, the nature of the instant infractions, and the other circumstances of the case, this penalty does not appear immoderate, and certainly it is one authorized by the act. It is not within our province on the record before us to interfere with the administrative determination. 7 U.S.C.A. 204, 211, 213; Cella v. United States, 7 Cir., 1953, 208 F.2d 783, certiorari denied 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138; Irving Weis & Co. v. Brannan, 2 Cir., 1948, 171 F.2d 232; Great Western Food Distributors v. Brannan, 7 Cir., 1953, 201 F.2d 476, certiorari denied 345 U.S. 997, 73 S.Ct. 1140, 97 L.Ed. 1404; cf. American Power & Light Co. v. Securities and Exchange Comm., 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Moog Industries, Inc. v. F.T.C., 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370.
 
 
 20
 Affirmed.
 
 
 
 [1]
 The 1958 amendment, P.L. 85-909, 72 Stat. 1749, is not applicable because the transactions in question were in 1955. Other statutory citations herein are to statutes as of that year and subsequent amendments are not cited nor quoted
 
 
 [2]
 The administrative regulations provide that 'Each market agency shall, before the close of the next business day following the sale of any livestock consigned to it for sale, transmit of deliver to the consignor or shipper of the livestock * * * a true written account of such sale, showing * * * the name of the purchaser * * * and such other facts as may be necessary to complete the account and show fully the true nature of the transaction.' 9 CFR 201.43. The regulation concerning transactions in which a market agency purchases livestock are similar to those which apply to transactions in which a market agency receives livestock on consignment. 9 CFR 201.44. 'When livestock * * * is weighed for purposes of purchase or sale, a scale ticket shall be issued which shall show * * * the name of the seller, the name of the buyer, and the name of the consignor. * * *' 9 CFR 201.49
 
 
 [3]
 This regulation provides in substance that no market agency shall sell livestock belonging to it or to its owners, officers, agents, or employees, or in which they have an ownership interest, in such a manner as to prejudice the interests of consignors who have consigned livestock to the market agency for sale for their accounts
 
 
 [4]
 It is the duty of a market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at posted stockyards, 7 U.S.C.A. 205, and 'To establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services. * * *' 7 U.S.C.A. 208. It is made unlawful for a market agency or dealer 'to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with the receiving, marketing, buying, or selling on a commission basis or otherwise * * * holding, delivery, shipment, weighing, or handling, in commerce at a stockyard, of livestock.' 7 U.S.C.A. 213(a). Cf. Denver Union Stock Yard Co. v. Producers Livestock Marketing Ass'n, 356 U.S. 282, 78 S.Ct. 738, 2 L.Ed.2d 771
 
 
 [5]
 A 'market agency' is defined in the act as 'any person engaged in the business of (1) buying or selling in commerce livestock at a stockyard on a commission basis or (2) furnishing stockyard services.' 7 U.S.C.A. 201(c). The term 'stockyard services' is defined as 'services or facilities furnished at a stockyard in connection with the receiving, buying, or selling on a commission basis or otherwise, marketing, feeding, watering, holding, delivering, shipment, weighing or handling in commerce, of livestock.' 7 U.S.C.A. 201(b). The term 'dealer' is defined in the act as 'any person, not a market agency, engaged in the business of buying or selling in commerce livestock at a stockyard, either on his own account or as the employee or agent of the vendor or purchaser.' 7 U.S.C.A. 201(d). Cf. Kelley v. United States, 10 Cir., 1953, 202 F.2d 838
 
 
 [6]
 A market agency or dealer is required to 'keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business. * * *' 7 U.S.C.A. 221. The act incorporates section 10 of the Federal Trade Commission Act which prohibits a person from wilfully making or causing to be made any false entry in any account, record, or memoranda pertaining to the business of such person or neglecting or failing to make or cause to be made full, true, and correct entries in the accounts, records, or memoranda of all facts and transactions pertaining to the business of such person. 7 U.S.C.A. 222, 15 U.S.C.A. 50
 
 
 [7]
 See 7 U.S.C.A. 205, 208, 213
 
 
 [8]
 The Secretary is authorized to issue such rules, regulations and orders as may be necessary to carry out the provisions of the act. 7 U.S.C.A. 228. The administrative regulations provide in effect that if the secretary finds that any market agency or licensee has used for purposes of its own any funds that have come into its possession in its capacity as an agent, the market agency or licensee shall thereafter deposit the gross proceeds received from the sale of livestock handled on a commission or agency basis in a separate bank account designated as 'Custodial Account for Shippers' Proceeds,' or by a similar identification. It is further provided that 'Such account shall be drawn on only for payment of the net proceeds to the consignor or shipper, or such other person or persons whom such market agency * * * has knowledge is entitled thereto, and to obtain therefrom the sums due the market agency * * * as compensation for its services. * * *' 9 CFR 201.42