NATIONAL LIFE & ACCIDENT INS. CO. v. REESE, Adm'r.

*96 P. 2d 1058.*

No. 29095.   Oct. 31, 1939.

Rehearing Denied Nov. 21, 1939.

Application for Leave to File Second Petition for Rehearing Denied Dec. 19, 1939.

Val Jean Biddison, and Harry Campbell, Jr., both of Tulsa, for plaintiff in error.

Anton Koch, of Henryetta, and Henry R. Duncan, of Tulsa, for defendant in error.

DAVISON, J.   This action is presented on appeal from the court of common pleas of Tulsa county, Okla., where it was instituted on the 20th day of December, 1937, by Jno. L. Ward, L. A. Justus, Jr., and John L. Ward, Jr., constituting the law firm of Ward, Justus & Ward, and S. E. D u n n , as plaintiffs, against the National Life & Accident Insurance Company, as defendant, to recover on a policy of insurance issued by the defendant on the life of Virgil Reese, in which Oliver P. Quarles was named as the beneficiary. The policy was for the sum of $500, and provided for double indemnity in case of death resulting from bodily injury attributable to "external,

violent, and accidental means." The plaintiffs, as assignees of the beneficiary, sought to recover $1,000 on the theory that the insured's death, which occurred on the 23rd day of May, 1937, was due to external, violent, and accidental means.

Thereafter, L. E. Reese, as administrator of the estate of Virgil Reese, intervened in the action, asserting that he was entitled to the proceeds of the insurance policy on the theory that the beneficiary, Oliver P. Quarles, had feloniously killed the insured, and that he and his assignees could therefore not receive the benefits of the insurance on the life of said insured, Reese.

On May 23, 1938, O. P. Quarles, denominating himself a defendant, executed and filed in the action a disclaimer reciting his previous assignment to the plaintiffs and affirming his relinquishment of all claims to the proceeds of the policy. On the same date and by a separate instrument, the plaintiffs, joined by Quarles, executed and filed in the action a disclaimer of any further interest in the controversy and relinquished their claims to the proceeds of the policy.

Thereafter, on June 20, 1938, the insurance company filed its amended answer joining issue with the petition of the intervener, denying generally the allegations of said petition and specially denying the existence of any cause of action in favor of the beneficiary and also specially denying that the death of the insured was due to bodily injuries attributable to violent, external, and accidental means.

On the issues thus joined between the intervener and the insurance company, the cause was tried to the court without the intervention of a jury, resulting in a judgment for the intervener in the sum of $1,000. The defendant company appeals, appearing herein as plaintiff in error.

It is first contended by the company that the proof was insufficient to warrant recovery by the intervener. The company points out that the right of the intervener to recover depends upon the disqualification of the beneficiary named in the policy to receive the proceeds thereof. The defendant asserts that the disqualification of the beneficiary and his assigns to take, if any, is based upon section 1616, O. S. 1931, 84 Okla. St. Ann. § 231, and that under such section it is essential to show a design by the beneficiary to effect the death of the insured. It is urged that the evidence in this case was insufficient to establish the design. We shall assume that such a design to effect death was essential to the intervener's right to recover. Upon the authority of Goodwin, Adm'r, v. Continental Casualty Co., 175 Okla. 469, 53 P. 2d 241, we are of the opinion that the defendant's position is unsound.

The evidence in this case established that Virgil Reese was shot and killed at the home of Quarles by Quarles, and while the wife of Quarles was on the premises. Three bullet wounds were inflicted upon the deceased. One of the bullets struck him in the back. There is some evidence in the record intended to establish justification for the homicide; however, the same is not conclusive, and the trial court was authorized to consider the presumption of design to effect death arising from the established fact of the homicide, together with the circumstances, in arriving at its decision. Goodwin, Adm'r, v. Continental Casualty Co., supra.

Incidentally, there had been no conviction of Quarles when this case was tried. He had been tried once on the charge of murder, but a mistrial had been declared when the jury was unable to agree, and, consequently, the charge was then still pending.

It may be observed at this point that the legal disqualification of a beneficiary, who has feloniously killed the assured, to receive the benefits of an insurance policy is not a rule of law intended to confer benefits upon insurance companies and enable them to escape their contractual obligations. Upon this point, it was said in Equitable Life Assur. Soc. v. Weightman, 61 Okla. 106, 160 P. 629:

"There is no question of fraud in the inception of the contract raised, and the policy is expressly incontestable after one year from its date, which time had expired. The policy contained no provision for an alternative beneficiary, in the event of the disqualification of either beneficiary. It has no provision that it should be forfeited, in the event of the murder of the insured, and no condition of any kind against murder. Neither the beneficiary, nor her assignee, can recover because of the wrong perpetrated by her; but does her wrong absolve the insurer from liability? We are of a contrary opinion. To so hold would avoid the policy, and sweep out of existence the obligations which the contract created as between the insurer and Thomas J. Gentry, who has committed no wrong, but who has been the victim of the utmost wrong. Thomas J. Gentry paid the premium upon this policy, and was as essentially a party to the contract of insurance upon his own life as either the insurer or the beneficiary. He is as innocent of the crime against himself and against the contractual relations of the parties as is the insurer. His murder was an event over which he had no more control than did the insurance company. His homicide was the highest degree of murder, which means that he was wholly without fault in bringing it about. So far as he is concerned, the event which matured the policy, if it be held to have so done, was as free of his fault as if he had been stricken down with the germs of some deadly disease, instead of by the hand of his wife. Can it be gainsaid that he had rights under his contract? Can we hold that those rights have been obliterated without his consent, without his fault? We do not think that the law of contracts, public policy, or equity would demand such a consummation. * * *

"As to individual policies, there is abundant authority from other courts, and it seems almost unanimous, to the effect that if the insured be murdered by his beneficiary, or if for any other reason the *beneficiary be disqualified*, the policy and the law not specifically providing an alternative beneficiary, a resulting or constructive trust arises by operation of law by which the benefits of the policy vest in the insured, or in his estate in event of his death." (Italics ours.)

It is not claimed by the insurance company in this case that either Quarles or his assignees could ever recover on its policy in view of their disclaimers. The policy of the law is observed and the liability of the company discharged when it has paid its contractual obligation to the intervener herein. The theories of law which the defendant invokes were intended to prevent wrongdoers f r o m profiting from their wrongful acts rather than to provide a loophole in the law for the insurance companies. Upon this point the judgment of the trial court is supported by the proof, and the contention of the defendant is denied.

The remaining contention of the defendant company as stated by it is:

"If the court should feel that there is sufficient evidence for judgment to be rendered for the face value of the policy sued upon, there is no evidence which would justify the rendition of a judgment in favor of the intervener and against the defendants for the double indemnity for accidental death."

Under this point, the defendant also states that:

"There is, of course, no question but that the means of the death of the insured were external and violent, and the issue turns solely upon the question of whether or not it was accidental."

Under the law of this state, an injury may be accidental even though it was intentionally inflicted by another. Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812; Lincoln Health & Accident Ins. Co. v. Johnigan, 114 Okla. 223, 245 P. 837; and Goodwin, Adm'r, v. Continental Casualty Co., supra.

The defendant urges, however, that there is evidence in the record which establishes that the difficulty resulting in the death of the insured was provoked by threats of violence of the deceased, that the deceased voluntarily engaged in or provoked the difficulty. The evidence relied upon is that of Quarles and his wife. It is generally accepted in this and other jurisdictions that the fact that one becomes involved in a difficulty and himself commits acts of violence does

136

not deprive his own injury of its accidental character if the injuries which he received could not have been reasonably anticipated by him. As we said in Prudential Ins. Co. of America v. Tidwell, 163 Okla. 39, 21 P. 2d 28:

"It is likewise the rule accepted in a majority of jurisdictions that injuries received by an insured while engaged in quarreling or fighting, which injuries could not have been reasonably anticipated, are covered by the terms of an accident policy unless the policy excepts that class of liability. 1 C. J. 431, par. 77, and authorities cited in the notes; Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812, L. R. A. 1915D, 358; Carroll v. Fidelity, etc., Co. (C. C.) 137 F. 1012; Union Casualty & Surety Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. Rep. 873."

See, also, Mid-Continent Life Insurance Co. v. Davis, 174 Okla. 262, 51 P. 2d 319.

While there is evidence in the record indicating that the deceased participated in a difficulty immediately prior to his death, we think the trial court was justified in concluding that the injury received by him and the means thereof could not have been reasonably anticipated, and that the cause of death was therefore accidental in character. The evidence and reasonable inferences to be drawn therefrom are sufficient to warrant the conclusion, and it is therefore not within our province to disturb the judgment on the question of fact involved.

The judgment of the trial court is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and CORN and HURST, JJ., concur.