506 F.2d 379
 Carolyn J. GLASS and Mary E. Glass, as mother and next of
kin of Kenneth Eldon Glass, minor, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant and Third-Party
Plaintiff-Appellant, v. Rebecca Frances GLASS,
Third-Party Defendant-Appellee.
 No. 74-1127.
 United States Court of Appeals, Tenth Circuit.
 Argued Oct. 25, 1974.
Decided Dec. 11, 1974.
 
 H. I. Aston, Tulsa, Okia. (Ed. R. Crockett, Tulsa, Okla., on the brief), for plaintiffs-appellees.
 David V. Seaman, Civ. Div., Dept. of Justice, Washington, D.C. (Carla A. Hills, Asst. Atty. Gen., Washington, D.C., Nathan G. Graham, U.S. Atty., Tulsa, Okla., and Morton Hollander, Civ. Div., Dept. of Justice, Washington, D.C., on the brief), for plaintiff-appellant.
 Edward O. Monnet, Tulsa, Okla., for third-party defendant-appellee.
 Before SETH, McWILLIAMS and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 The United States of America, Defendant and Third-Party Plaintiff, appeals from an adverse judgment after trial to the court. A summary of the pertinent facts will facilitate our review.
 
 
 2
 On April 9, 1967, Elliott M. Glass died as a result of a gunshot wound. At the time of his death, Glass was insured under a $10,000 National Service Life Insurance (NSLI) policy issued under the auspices of the Veterans Administration (V.A.). Under the terms of the policy, Elliott's second wife, Rebecca Frances Glass, Third-Party Defendant herein, was the primary beneficiary, and the children of his first marriage,[1] Carolyn J. and Kenneth Eldon Glass, Plaintiffs herein, were the contingent beneficiaries.
 
 
 3
 On May 8, 1967, Rebecca filed a claim, as primary beneficiary, for the policy proceeds. The claim as filed stated that Elliott's death was the result of homicide. On June 19, 1967, a grand jury returned an indictment against Rebecca for the murder of Elliott. Thereafter, on July 3, 1967, the V.A. was notified by the District Attorney's office that Rebecca had been charged with murder.
 
 
 4
 Notwithstanding the notification it had received that Rebecca had been indicted, the V.A., on February 7, 1968, after a thorough examination and investigation, concluded that Rebecca would not be brought to trial. Accordingly, the V.A. entered an administrative decision awarding Rebecca the policy proceeds. This action was taken without affording notice to the Plaintiffs, as contingent beneficiaries. Payment was tendered to Rebecca by the V.A. on February 21, 1968.
 
 
 5
 On June 17, 1968, Rebecca was found guilty of murder without malice of Elliott. On August 16, 1968, Carolyn and Kenneth made an informal claim upon the V.A. for the policy proceeds as contingent beneficiaries. A formal claim was filed pursuant to NSLI regulations on October 11, 1968. This claim was denied on June 12, 1970, and Carolyn and Kenneth filed suit against the United States on April 23, 1971. On September 9, 1971, Rebecca was interpled as a Third-Party Defendant.
 
 
 6
 After trial to the court, the court found, inter alia:
 
 
 7
 6. On July 3, 1967, the Veteran's Administration received a letter from the District Attorney's Office of Farrant County, Texas, advising the Veteran's Administration that the primary beneficiary was charged with the murder of Elliott M. Glass.
 
 
 8
 7. That after a field examination was made by the Veteran's Administration-- an administrative decision was rendered in favor of the widow. No notice was given to any of the secondary beneficiaries for any hearing.
 
 
 9
 8. The Veteran's Administration, in the instant case, either made a determination not to, or failed to file an interpleader action.
 
 The court also held as a matter of law:
 
 10
 6. Ordinarily payment made by the insurance policy to the person entitled to the proceeds, in good faith, and without knowledge of facts vitiating his claim will protect the insurer and will discharge the insurer of all further liability; but payment made, voluntarily, with full knowledge of that facts, or notice, putting it on inquiry will not allow an insurance company to recover proceeds paid . . ..
 
 
 11
 7. The Court concludes, as a matter of law . . . that the Plaintiffs are entitled to recover the insurance proceeds from the Defendant.
 
 
 12
 8. The Court further finds, as a matter of law, that the Defendant is not entitled to judgment over against the Third-Party Defendant.
 
 
 13
 On appeal the United States contends that: (1) the Trial Court erred in awarding NSLI proceeds to the contingent beneficiaries, under the circumstances of the case; and (2) the Government is entitled to a judgment over against the widow (Rebecca) for the insurance money that she received.
 
 I.
 
 14
 Appellant United States contends that the Trial Court erred in awarding the NSLI proceeds to the contingent beneficiaries, Carolyn and Kenneth Glass, under the circumstances of this case. Appellant recognizes the well established rule that no person should be permitted to profit from his own wrong, and that a designated beneficiary should not be allowed to receive policy proceeds after killing the insured. The United States also agrees that Rebecca's state conviction was 'properly admissible in this case, to be duly considered . . . with the entire file.' From these two predicates the United States argues, however, that a state conviction does not bind a federal court, that such a conviction may be disregarded in a subsequent insurance suit if the facts warrant, and that the 'unusual facts and circumstances of this case should have led the court to disregard the conviction.'
 
 
 15
 Appellant argues that it paid Rebecca when she was the only claimant; that she was paid prior to her conviction; that the contingent beneficiaries did not file a claim and did not object when Rebecca was paid; that their delay in submitting their claim 'has obviously prejudiced the Government'; that the contingent beneficiaries 'stood idly by' and are therefore estopped; and that the administrative decision of the V.A. should be accorded great weight by this court because it did not abuse its discretion in awarding the policy proceeds to Rebecca. We cannot agree.
 
 
 16
 Appellate courts will afford great weight to administrative decisions properly rendered by agencies vested with the authority to so act, and will not set aside a decision unless it is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Administrative Procedure Act, 5 U.S.C.A. 706. We hold that the action of the V.A. was an abuse of discretion and a violation of general law. Accordingly, we cannot enforce it. The V.A. decision, if permitted to stand, would work great detriment upon Carolyn and Kenneth Glass.
 
 
 17
 While it is true that the V.A. paid the proceeds to Rebecca when she was the only claimant, and that she was paid prior to her conviction and before the contingent beneficiaries filed a claim, still we cannot accept the V.A.'s argument that the Plaintiffs stood idly by 'to the obvious prejudice' of the Government and that as a result, they should be estopped from asserting a claim.
 
 
 18
 Prior to Rebecca's conviction the Plaintiffs had no right to claim the policy proceeds. Their rights to claim were as contingent beneficiaries, and as such, secondary to the primary rights claimed by Rebecca as principal beneficiary. It was only after her conviction that Rebecca, in legal effect, forfeited her right to the policy proceeds. Even so, at that point in time, the fact remains that the V.A. had already paid the proceeds to her. Under these circumstances we cannot countenance a holding that the premature payment by the V.A. vitiated the Plaintiffs' rights under the policy. This is particularly compelling in light of the fact that the V.A. knew that Elliott had died of a gunshot wound; that Rebecca had been indicted; that the Plaintiffs were designated contingent beneficiaries (and that Kenneth was a minor at the time of his father's death); and that it could interplead 'all persons having or claiming to have any interest' via 38 U.S.C.A. 784(a) in order to obtain a judicial determination of entitlement to the payment. Having opted not to interplead and thus, in effect, protect itself as against any and all claimants under the umbrella of the jurisdiction of the court, the Government cannot now be heard to complain that the contingent beneficiaries had an obligation to voice their objection to its payment made to Rebecca prior to her conviction. We believe that any other result defies logic and precludes justice. Were we to adopt the V.A. contention we would, in effect, place the Plaintiffs in the untenable position of arguing, prior to Rebecca's conviction, that she was not entitled to the proceeds because of the outstanding indictment when the V.A., after a 'thorough investigation', had determined that it was doubtful that Rebecca would be brought to trial.
 
 
 19
 In holding that the payment to Rebecca was premature, and that the V.A. erroneously declined to utilize 38 U.S.C.A. 784(a), we are not usurping the discretion afforded the V.A. As we noted in Western Bancshares, Inc. v. Board of Governors of the Federal Reserve System, 480 F.2d 749 (10th Cir. 1973):
 
 
 20
 Contemporaneous construction of a statute by an agency charged with its enforcement (or utilization, as here) is entitled to great deference by the courts. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). But we are not bound thereby, and particularly so where neither the Act nor the legislative history contains one word expressly permitting the administrative authority assumed. National Labor Relations Board v. The Boeing Company, 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973); Scofield v. National Labor Relations Board, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969). 480 F.2d at 753-754.
 
 
 21
 It is clear that the V.A. could have avoided the aspect of double payment. We are unable to conclude from a review of the statutes involved, and a consideration of all of the facts and circumstances of this record, that the V.A. may avoid its obligation to pay the policy proceeds to the appellees-- contingent beneficiaries-- simply because it negligently and erroneously paid the entire proceeds prematurely to Rebecca. We have already referred to the simple solution readily available to the V.A. in avoidance of its predicament presented here-- the filing of the interpleader action which is specifically designed for these cases.
 
 II.
 
 22
 Having contended that the V.A. properly paid Rebecca and that the Trial Court erred in awarding the policy proceeds to the Plaintiffs, the Appellant argues that it is entitled to a judgment over against Rebecca because 'the United States can always recover erroneous payments made by its agents.' The 'mental gymnastics' or such circuitous reasoning are unpalatable. Furthermore, no cogent authority has been cited for our consideration in support of the V.A. argument.
 
 
 23
 We hold that the Trial Court did not err in awarding the Plaintiffs the policy proceeds and at the same time disallowing the Government's third-party claim.
 
 
 24
 Affirmed.
 
 
 
 [1]
 Elliott's first wife was Mary E. Glass. Her appearance in this suit was solely on behalf of Kenneth, a minor at the commencement of the action