696 P.2d 1027 (1985)
STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Plaintiff,
v.
Tony F. HAMPTON, Jr., Adm. of the Estate of Tony F. Hampton, III, decd., Sawart Hampton, surviving spouse of Tony F. Hampton, III, decd., and State of Oklahoma, ex rel., Department of Human Services, custodian of Maneerat Lalansad and Tull Hampton, Minors, Defendants.
No. 61981.
Supreme Court of Oklahoma.
March 6, 1985.
As Corrected March 12, 1985.
James R. Lloyd, Tulsa, for petitioner.
Katherine Vance, William Drisko, Randal Morley, Tulsa, for respondents.
*1029 SIMMS, Chief Justice:
Interlocutory certiorari was granted by this Court to review a certified order from the District Court of Tulsa County. Following a pre-trial hearing, the trial court made the following findings and conclusions, which were certified to this Court:
"1. The defendant Sawart Hampton's acquittal [on charges of first-degree murder and first-degree manslaughter] does not automatically entitle her to the proceeds of the [decedent's life] insurance policy under 84 O.S. 1981, § 231. This section does not require a conviction before the defendant Sawart Hampton is precluded from receiving the benefits under the policy.
2. The defendant Sawart Hampton has the burden of proof by a preponderance of the evidence to show the existence of the insurance contract, the death of the insured covered by the policy, and her status of primary beneficiary under the policy entitling her to receipt of the proceeds. These facts will probably be established by stipulations of counsel.
3. The burden of proof is then on the defendants guardians ad litem and administrator to prove by a preponderance of the evidence that the defendant Sawart Hampton is precluded from receiving the proceeds under the policy by reason of her taking or causing to be taken the life of the insured in such a manner as to constitute first degree or second degree murder or first degree manslaughter."
This Court is asked to reverse the findings of the trial court and declare that under 84 O.S. 1981, § 231, a beneficiary's right to recover insurance proceeds may be denied only if the beneficiary is convicted of the insured's murder or first-degree manslaughter. Petitioner Sawart Hampton also alleges that the trial court erred in determining that a beneficiary who is acquitted of the insured's murder or first-degree manslaughter is not automatically entitled to recover the insurance proceeds. Petitioner asserts that, contrary to the trial court's findings, the beneficiary's acquittal on criminal charges bars relitigation in a civil proceeding of the issue of whether or not the beneficiary took, or caused to be taken, the life of the insured in such a manner as to constitute murder or first-degree manslaughter.

I.

OPERATIVE FACTS
In 1981, Tony F. Hampton III (husband) entered into a group accidental death and dismemberment policy with State Mutual Life Assurance Company of America (insurance company). Husband named his wife, Sawart Hampton (wife) as beneficiary under the policy.
On or about October 6, 1982, while the policy was in full force and effect, husband died as the result of injuries incurred during a family quarrel.
Wife was arrested and charged with husband's first-degree murder. On June 23, 1983, prior to the final disposition of wife's murder trial, insurance company filed an interpleader action in Tulsa District Court. Named as defendants were wife (named beneficiary), Tony F. Hampton, Jr., (Special Administrator of husband's estate), and State of Oklahoma, ex rel., Department of Human Services, as custodian of the couple's minor children, Maneerat Lalansad and Tull Hampton (children). Guardians ad litem were subsequently appointed to represent children.
*1030 Insurance company did not contest its liability under the policy. However, in order to avoid potential conflicting claims by the named beneficiary, children, and special administrator in light of the circumstances surrounding husband's death, insurance company paid the $100,000.00 policy limit into court. The trial court, Judge Jane P. Wiseman, then granted insurance company's motion to be dismissed from further proceedings.
Wife was acquitted on October 21, 1983, of both first-degree murder and the lesser included offense, first-degree manslaughter. Six days thereafter wife filed a motion for summary judgment in the pending interpleader action, asserting that by reason of her acquittal, she was automatically entitled to the insurance proceeds. Wife's motion was overruled by the trial court.
In February, 1984, a pre-trial conference and hearing were held on the interpleader action. Determining the issues that would be litigated at trial, the trial court made the findings and conclusions that were certified for an interlocutory appeal to this Court.

II.

LEGAL ISSUES
In this case, this Court is asked for the first time to determine whether, under 84 O.S. 1981, § 231, a named beneficiary under a life insurance policy who is acquitted of the insured's murder or first-degree manslaughter is automatically entitled to recover the insurance proceeds, so that relitigation in a civil proceeding of the issue of the beneficiary's criminal responsibility for the insured's alleged felonious,[1] intentional and unjustified homicide, as distinguished from excusable or justifiable homicide is barred.
Section 231[2] (commonly known as the "slayer statute") provides in pertinent part:
"No person who is convicted of murder in the first degree, as defined in 21 O.S. 1971, Section 701.1, or murder in the second degree, as defined in 21 O.S. 1971, Section 701.2, subparagraph 1 or 2, or manslaughter in the first degree, as defined in 21 O.S. 1971, Section 711, subparagraph 2, under the laws of this state, or the laws of any other state or foreign country, of having taken, caused, or procured another so to take, the life of an individual, shall inherit from such victim, or receive any interest in the estate of the victim, or take by devise or legacy or as a surviving joint tenant, or descent or distribution, from him, or her, any portion of his or her, estate; and no beneficiary of any policy of insurance * * * payable upon the death or disability of any person, who in like manner takes or causes or procures to be taken, the life upon which such policy or certificate is issued, * * * shall take the proceeds of such policy * * *." [emphasis added]
Wife asserts that under § 231, a beneficiary's right to proceeds under an insurance policy may be denied only if the beneficiary is convicted of the insured's murder or first-degree manslaughter. Thus, wife concludes, she is automatically entitled to recover the proceeds under husband's insurance policy because she has been acquitted of the criminal charges, and the issue of her criminal responsibility for husband's *1031 felonious, intentional and unjustified killing may not be relitigated in a civil proceeding.

III.

WHETHER UNDER § 231 A BENEFICIARY'S RIGHT TO RECOVER INSURANCE PROCEEDS MAY BE DENIED ONLY IF THE BENEFICIARY IS CONVICTED OF THE INSURED'S MURDER OR FIRST-DEGREE MANSLAUGHTER.
In Equitable Life Assurance Society v. Weightman, 61 Okl. 106, 160 P. 629 (1916), this Court was for the first time asked to determine the rights of a beneficiary who had taken the life of the insured. A wife had been convicted of murdering her husband. This Court held that as a result of her act, the wife forfeited her rights as beneficiary under her husband's insurance policy, and that a constructive trust arose by operation of law in favor of the insured's estate.
Equitable, supra, was based on common law, since the cause of action arose prior to the effective date of Oklahoma's slayer statute. The Court recognized the common law maxim that no person should be permitted to benefit from his own wrongful conduct:
"... Human law is the offspring of divine law. One of the strongest principles of that law is compensation. Every man compensates his own wrong. He cannot claim the benefits of it." 160 P. at 631.
In Goodwin v. Continental Casualty Co., 175 Okl. 469, 53 P.2d 241 (1935), a beneficiary was convicted of manslaughter. Holding that the beneficiary could not recover the proceeds of the insured's life insurance policy, this Court cited Equitable, supra, and stated:
"It may be conceded that a beneficiary in a policy of life insurance who feloniously takes or causes to be taken the life of the assured is thereby barred from collecting the insurance money; and that such rule applies in the absence of statute and is based upon public policy." 53 P.2d at 242.
While in both Equitable, supra and Goodwin, supra, the beneficiary had been convicted of killing the insured, the holdings in these cases indicate that it was the beneficiary's felonious act rather than the fact of the beneficiary's conviction that this Court found to be determinative.
Neither of these cases, nor the language of § 231 supports wife's conclusion that a conviction is the only basis for denying a beneficiary's right to proceeds under an insurance policy. Had the legislature wished to make a conviction of murder or first degree manslaughter of the insured the only basis for denying insurance proceeds to a beneficiary, they could easily have inserted language in § 231 restricting disqualification to only those beneficiaries who are convicted. The statute, however, does not declare such a limitation.
A number of states have enacted statutes similar to § 231 which prohibit a beneficiary convicted of killing the insured from recovering the proceeds under the insurance policy.[3] Courts interpreting these statutes have held that the automatic disqualification of a convicted beneficiary is merely an extension of the common law rule that no person should benefit from his own wrongful conduct, and not a limitation or abrogation of that rule.[4]
Prior to its decision in Harper v. Prudential Ins. Co. of America, 233 Kan. 358, 662 P.2d 1264 (1983), the Kansas Supreme Court had consistently held that under its slayer statute (KSA § 59-513 (1976)) a conviction *1032 was required in order to bar a beneficiary from recovering under the insured's life insurance policy.
In Harper, the Kansas court examined its previous decisions construing their statute, which is similar to 84 O.S. 1981, § 231, and stated:
"We have analyzed these cases and concluded that the rule that there must be a conviction of the beneficiary before he may be barred from recovering the proceeds of a life insurance policy was ill-conceived and should no longer be followed in this state and that we should adopt the common-law rule which is almost universally followed in this country and which bars the beneficiary of a life insurance policy who feloniously kills the insured from recovering under the policy whether convicted or not.

"... The statute does not preclude judicial application of the common-law rule in cases where the beneficiary killed the insured but has not been convicted of the crime." 662 P.2d at 1271. [emphasis added]
Likewise, we find that § 231 bars a beneficiary who has actually been convicted of the insured's murder or first-degree manslaughter from recovering under the insurance policy. However, § 231 does not preclude judicial application of the common law rule we expressed in Equitable Life Assurance Society v. Weightman, supra, in cases where the beneficiary has not been convicted of the crime.
Section 231 does not provide that a conviction of the statutorily designated degrees of homicide is the only ground for a beneficiary's disqualification, and we do not choose to construe it so narrowly.
Our construction of § 231 is supported by this Court's holding in National Life and Accident Ins. Co. v. Reese, 186 Okl. 133, 96 P.2d 1058 (1939). In Reese, there had been no conviction of the beneficiary accused of killing the insured when an action to recover the proceeds of the decedent's life insurance policy was brought by the beneficiary's assignees. This Court, citing its decisions in Equitable, supra, and Goodwin, supra, upheld the trial court's judgment awarding the proceeds to the insured's estate rather than to the beneficiary's assignees.
Thus, we conclude that under § 231, a beneficiary's conviction of the insured's murder or first-degree manslaughter is not required in order to preclude a beneficiary from recovering the proceeds of life insurance.

IV.

"WHETHER UNDER § 231 A BENEFICIARY WHO IS ACQUITTED OF MURDER OR FIRST-DEGREE MANSLAUGHTER OF THE INSURED IS AUTOMATICALLY ENTITLED TO THE INSURANCE PROCEEDS.
Even if § 231 does not require a conviction before a beneficiary's recovery under an insurance policy may be barred, wife argues that her acquittal should still conclusively establish her right to the insurance proceeds, because her criminal responsibility for husband's death has been adjudicated.
Wife suggests that we consider Wilson v. Wilson, 78 Cal. App.3d 226, 144 Cal. Rptr. 180 (1978), as persuasive authority. In Wilson, a California appellate court held that a wife's acquittal on charges of murdering her husband was conclusive on the wrongfulness of her actions, and that she was therefore entitled to recover the proceeds under her husband's insurance policies. However, unlike § 231, California's slayer statute [Cal.Probate Code Ann. § 258 (West Supp. 1984)], expressly gives conclusive effect to an acquittal.
Nor are we persuaded that the Tenth Circuit's interpretation of 84 O.S. 1981, § 231 in Glass v. United States, 506 F.2d 379 (10th Cir.1974), supports wife's contention that she is entitled to automatically recover the insurance proceeds in light of her acquittal. The court's statement in Glass that "[i]t was only after her conviction that [beneficiary], in legal effect, forfeited *1033 her right to the policy proceeds ..." (506 F.2d at 382) only supports the conclusion that because wife was not convicted, she has not forfeited any right she may have to the proceeds of husband's insurance policy.
Wife argues that the issue of her criminal responsibility for husband's death should not be relitigated in a civil proceeding. However, in light of the disparate consequences of a criminal adjudication and a civil proceeding, we find it unlikely that the legislature intended that an acquittal have any effect on the question of a beneficiary's right to insurance proceeds under § 231.
Proof beyond a reasonable doubt is not necessary in order to establish the existence of a crime in a civil proceeding, and an acquittal may merely mean failure to meet the higher standard of proof required in a criminal proceeding. A subsequent civil action based on the same facts could produce a different result since a lesser burden of proof, a preponderance of the evidence, is required.
Moreover, special administrator and children, who are entitled to take under § 231 if wife is barred, were not parties to the criminal case. Due process standards would preclude their being bound by the result of proceedings in which they did not participate. See, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326, n. 7, 99 S.Ct. 645, 649, n. 7, 58 L.Ed.2d 552 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); California-Western States Life Ins. Co. v. Sanford, 515 F. Supp. 524, 533 (E.D.La. 1981).
A number of courts have held that the acquittal of a beneficiary on charges of killing the insured is not conclusive on the issue of the beneficiary's right to insurance proceeds.[5] Likewise, we conclude that a beneficiary's acquittal does not per se entitle that beneficiary to recover proceeds of a decedent's insurance policy.

V.

WHETHER THE PENDING INTERPLEADER ACTION IS BARRED BY FINAL JUDGMENTS IN OTHER CIVIL ACTIONS ARISING FROM HUSBAND'S DEATH
Wife argues that even if her acquittal on the first-degree murder and first-degree manslaughter charges does not conclusively establish her right to recover the proceeds under husband's insurance policy, the issue of whether or not she feloniously killed husband was decided in her favor in a probate proceeding on April 6, 1984. Wife contends that under the doctrine of res judicata, or alternatively under the doctrine of collateral estoppel, children and special administrator are barred from asserting in the pending interpleader action that wife is not entitled to receive the insurance proceeds.
However, it does not appear from the record before us that the issue of whether or not the interpleader action is barred by the probate court's judgment  or by judgments in other civil cases arising from husband's death (including a pending wrongful death action, custody proceedings, and other probate proceedings)  has been argued before or considered by the trial court. The pre-trial hearing in the interpleader action was held on February 27, 1984, and the certified interlocutory order reviewed here by this Court was entered by the trial court on that date  more than a month prior to the probate court's final determination on April 6, 1984.
Because the issue of whether the pending interpleader action is barred by judgments in other civil cases has not been raised or specifically dealt with in the trial *1034 court, and because this question was not certified to us, we need not decide this issue in this case. Gilmore v. St. Anthony Hospital, Okl., 516 P.2d 248 (1973); State ex rel. Dept. of Highways v. Gosselin, Okl., 493 P.2d 430 (1972); Petitioners of School Dist. No. 9 v. Jones, 193 Okl. 9, 140 P.2d 922 (1943). Instead, that issue is addressed in a companion case, In the Matter of the Estate of Tony Franklin Hampton III, Deceased, Okl., 696 P.2d 1027, an appeal which is presently pending in this Court.

VI.

CONCLUSION
We agree with the trial court's finding that 84 O.S. 1981, § 231 does not require that a beneficiary be convicted of the insured's murder or first-degree manslaughter in order to be disqualified from receiving the proceeds under the insurance policy. We further agree with the trial court that under § 231 an acquittal of these felonies is not conclusive on the issue of whether or not a beneficiary took, or caused to be taken, the life of the insured in such a manner as to constitute a felonious, intentional, unjustifiable homicide, and that this issue may be litigated in a subsequent civil proceeding to determine the rights of claimants to the decedent's insurance proceeds. See, National Life and Accident Ins. Co. v. Reese, 186 Okl. 133, 96 P.2d 1058 (1939).
The trial court correctly concluded that wife has the burden of establishing by a preponderance of the evidence the existence of the insurance contract, the death of the insured covered by the policy, and her status as beneficiary under the policy. See, Metropolitan Life Ins. Co. v. Rosier, 189 Okl. 448, 117 P.2d 793 (1941).
If wife makes a prima facie showing that she has a right to recover as beneficiary under husband's policy, children and special administrator must be permitted to litigate their affirmative defense, whether or not wife took, or caused to be taken, the life of husband in such a manner as to constitute a felonious, intentional and unjustified homicide. If they prove this fact by a preponderance of the evidence, wife shall be precluded from recovering the insurance proceeds under husband's policy, and the proceeds shall be distributed according to the provisions set out in 84 O.S. 1981, § 231.
The trial court's order is AFFIRMED, with directions that the cause proceed to trial in accordance with this opinion.
AFFIRMED.
HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.
OPALA, J., concurs by separate opinion.
DOOLIN, V.C.J., and WILSON and KAUGER, JJ., dissent.
OPALA, Justice, concurring.
The court holds that (a) Oklahoma's slayer statute, 84 O.S. 1981 § 231,[1] does not abrogate but merely modifies the common-law rule by which one who killed the person from whose death he seeks to reap benefit is barred from receiving his bounty if the homicide was felonious, intentional and unjustified; (b) a beneficiary of a life insurance policy may be precluded from *1035 recovering the proceeds even though he has not been convicted of any of the three degrees of felonious homicide dealt with by the slayer statute;[2] (c) a beneficiary of life insurance policy who has been acquitted of any of the three criminal offences alluded to in the slayer statute is not ipso facto entitled to the policy proceeds; and (d) the status of an unconvicted or acquitted beneficiary qua slayer  i.e., a person who took the life of another in a felonious, intentional and unjustified manner  must be litigated in a civil dispute brought for the purpose of determining the rightful recipient of the policy proceeds. I am in full accord with both the court's pronouncement and its judgment. My purpose in writing separately is to isolate and articulate some added reasons for my general concurrence.

I

BECAUSE THE SLAYER STATUTE, 84 O.S. 1981 § 231, DOES NOT ABROGATE BUT MERELY MODIFIES THE COMMON LAW, IT MUST BE CONSTRUED TOGETHER AND IN A MANNER CONSISTENT WITH PRE-EXISTING NORMS OF THE UNWRITTEN LAW
Following the abolition of attainder of felony, corruption of blood, forfeiture of estates and escheat,[3] the common law began directing its attention to the slayer's quest for his bounty, whether the claim be laid by him as heir, surviving tenant, testamentary donee or a life beneficiary of the decedent.[4] The first American case to deal with the slayer's asserted interest in the proceeds of insurance upon the life of his victim was New York Mutual Life Insurance Co. v. Armstrong.[5] Ever since that pronouncement the common law on this side of the Atlantic Ocean has barred from recovery one who took the life of the insured in a felonious, intentional and unjustified manner.[6] This rule stood adopted in Oklahoma before the enactment of § 231.[7] Sec. 231, whose narrow sweep does not abrogate but merely modifies the common law, mandates only that when a slayer has been convicted of any one of the three enumerated degrees of felonious homicide, he stands barred from civil recovery ex lege. In short, any conviction that falls under the purview of § 231 constitutes, by the terms of that section, conclusive proof that the slayer did take his victim's life in a felonious, intentional and unjustified manner. The narrow statutory modification does not supplant the pre-existing rule of the common law. It only dispenses with the necessity of a later civil *1036 contest when the antecedent felony conviction of the slayer was for one of the statutorily-selected degrees of homicide. As recently as 1976 this court recognized the full force of the nonstatutory slayer's bar. It then held that a person who takes his joint tenant's life in a felonious, intentional and unjustified manner effects a destruction of his survivorship interest in the joint tenancy estate.[8]
Except as altered by our constitution and statutes, the common law, which includes decisions other than those of the English courts, remains in full force.[9] The intent to change it must be clearly and plainly expressed. It will not be presumed from an ambiguous, doubtful or inconclusive text.[10] Because there is no language in § 231 which indicates an intent to abolish the common-law rule, the terms of the section must be construed together and in a manner consistent with the pre-existing doctrine. When they are so viewed, the only effect of § 231 is to dispense with the necessity of a civil contest when the slayer has been convicted of one of the three degrees of homicide dealt with therein.[11]

II

THE PROPRIETY OF A POST-ACQUITTAL CIVIL CONTEST OVER LIFE INSURANCE PROCEEDS
There is nothing unique about requiring a post-acquittal civil contest to determine a slayer's eligibility to recover. An acquittal on a criminal charge is never a bar  not even between the government and the accused  to a civil action arising out of the same facts on which the criminal proceeding was based. The difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel (issue preclusion). Acquittal on a criminal charge merely reflects the existence of a reasonable doubt. It never rules out the possibility that a preponderance of the evidence, adduced in a civil contest, could show that the acquitted slayer did stand in the status of a person who took the life of the insured by a felonious, intentional and unjustified act.[12]
Oklahoma law affords other examples in the context of which a prior acquittal in the criminal case is not even prima facie evidence in a related civil action. Proof of acquittal does not of itself tend to show want of probable cause in a civil suit for malicious prosecution or false imprisonment.[13]In malicious prosecution litigation a defendant may collaterally attack a judgment in a criminal case by showing that the plaintiff, though acquitted, was actually guilty of the crime charged.[14] Similarly here, the slayer's acquittal is a fit subject for a collateral attack *1037 by proof showing that the widow, though acquitted, was actually guilty of taking the decedent's life in a felonious, intentional and unjustified manner.[15]
I hence accede both to the court's pronouncement and its judgment.
DOOLIN, Justice, dissenting:
I dissent. The majority has misinterpreted the language of 84 O.S.A. 1981, § 231, and has misapplied the applicable theories of law to the case at bar.
First, the majority adopts the view that the Oklahoma Legislature did not intend that a beneficiary must be convicted of murder or manslaughter in order to invoke the forfeiture provision of § 231. Such a conclusion ignores the plain language of this statute in deference to decisions rendered by this Court in 1916 and 1935; the former having been issued prior to the effective date of the statute and the latter prior to two, important amendments.
The amendments, described in Footnote 1, supra, are very revealing of the Legislature's intent and merit more careful attention. The basic statute, enacted in 1915, was essentially a codification of the common law rule which, arguably, left the stated requirement of a conviction open to interpretation. The 1963 amendment added the more restrictive requirement of a conviction of murder or manslaughter in the first degree. Lastly, in 1975, the precise, statutory definitions of the disqualifying crimes were included.
The trend, and therefore the intent, of these successive amendments is clear. With each, the Legislature further specified "conviction" required to invoke forfeiture. The latest change indisputably links the required conviction with strict, statutory definitions. It is unsound reasoning to suppose the Legislature would twice make additions which more precisely define the term "conviction," without some intent to alter its traditional meaning.
The venerable and often-expressed rule in interpreting statutes, is the court must never conclude the Legislature has done a vain thing. (Minnesota Mining & Manufacturing Co. v. Smith, 581 P.2d 31 (Okl. 1978)). This rule must either be applied in the instant case or it may hereafter be ignored at the convenience of the court. Why does the Legislature twice amend § 231, to make its language increasingly more specific, if it does not intend that changed language to have any effect? If the Legislature wished the common-law rule to remain unaltered, they would have not changed the very language of the statute which concerned that rule. To hold otherwise, to rule that the amendments make no change in the basic, 1915 enactment, is to hold that the Legislature has, in fact done a vain thing, twice.
On the contrary, it is obvious from these amendments and the clear trend they represent, that the Oklahoma Legislature intended to strictly limit forfeiture under § 231 to instances where persons entitled to inherit or take by insurance contract have been "convicted of murder in the first degree, as defined by 21 O.S. 1971, Section 701.1, or murder in the second degree, as defined in 21 O.S. 1971, Section 701.2, subparagraph 1 or 2, or manslaughter in the first degree, as defined in 21 O.S. 1971, Section 711, subparagraph 2, ...". Any other interpretation denies the most logical inferences which can be drawn from the Legislature's actions.
In reaching a contrary conclusion, the majority relies heavily on the result reached by the Supreme Court of Kansas in Harper v. Prudential Insurance Co., supra. That case is inapplicable here because *1038 the beneficiary was convicted of murdering the insured. The Kansas court was presented with a case where the facts clearly demanded an application of the common-law rule to prevent a manifest injustice. To hold otherwise than they did would have rewarded a convicted murderer for his act of homicide.
Parenthetically, it should be noted that in Harper, the Kansas court had facts before it which indicated the beneficiary was a drunkard, drug-user, known thief, pimp, snitch and habitual liar. The court's decision might, in some measure, have been influenced by this information.
Another aspect of the majority opinion with which I take exception is its reasoning about the due process rights of the special administrator and children. The argument that because these contingent beneficiaries were not parties to the criminal prosecution, their rights in the insurance proceeds were not accorded adequate due process is simply wrong.
As has been shown hereinabove, unless and until there was a conviction in accordance with § 231, the contingent beneficiaries were entitled to nothing. They had no vested rights to be protected. Only after the conviction of the primary beneficiary would the others become presently entitled to any portion of the proceeds of the insurance policy. Only after such vesting would they be entitled to any form of due process to protect their interest. (See: Randolph v. Board of Regents, 648 P.2d 825, at 827 (Okl. 1982)).
In addition to the foregoing arguments, there is another aspect of this case which merits a different result. While it is true there are instances where the termination of a criminal prosecution in favor of the defendant does not hinge on the ultimate issue of guilt, as where the case is dismissed for insufficient or illegally obtained evidence, such is not the case here. Petitioner was tried, at great length, before a jury which heard detailed and voluminous evidence regarding the death of the insured and that jury unamimously found Petitioner not guilty of either murder or manslaughter of the deceased. This was not an abbreviated hearing nor a technical acquittal on some fine point of law. It was a judgment by the accused's peers that she had not committed the crime (one of the crimes enumerated in § 231) with which she had been charged.
It is difficult to conceive what interest would be served by requiring Petitioner to relitigate the same charge and the same facts in another forum.
I believe the plain language of 84 O.S. 1981, § 231, as amended, specifically requires a conviction of one of the three, enumerated crimes before a beneficiary may be deprived of the proceeds of a policy of insurance on the life of a deceased. This being the case, it must necessarily follow that an acquittal would remove any question of forfeiture under this statute, especially where, as here, the acquittal is the verdict of a jury.
I would reverse the ruling of the trial court and enter judgment for Petitioner.
NOTES
[1] Hereinafter, the term "felonious" is used to mean "Proceeding from an evil heart of purpose. Wickedly and against the admonition of the law; unlawfully." Black's Law Dictionary, 5th ed.
[2] Section 231 was enacted by the Oklahoma legislature in 1915 (Laws 1915, c. 136, § 1), and was amended in 1963 (Laws 1963, c. 309, § 1) and in 1975 (Laws 1975, c. 356, § 1). In its original form, the first part of the section read: "No person who is convicted of having taken, or causes or procures another so to take, the life of another, shall inherit from such person, ..." The 1963 amendment added to the beginning of the section the emphasized words: "No person who is convicted of murder or manslaughter in the first degree under the laws of this State, or the laws of any other state or Foreign Country, of having taken,..." The 1975 amendment added the statutory definitions of murder in the first degree, murder in the second degree and first degree manslaughter, and added the phrase "or as a surviving joint tenant."

The emphasized language in § 231 with regard to beneficiaries of insurance policies has not been amended in any respect.
[3] See, e.g., Kan. Stat. Ann. § 59-513 (1983); Ken. Rev.Stat.Ann. § 381.280 (1981); N.C. Gen. Stat. § 31A-3 et seq. (1976); Ohio Rev. Code Ann. § 2105.19 (1976); S.C.Code § 21-1-50 (1976); Va.Code § 64.1-18 (1980); W. Va.Code § 42-4-2 (1982); Utah Code Ann. § 75-2-804 (1975).
[4] See, e.g., Harper v. Prudential Insurance Co. of America, 233 Kan. 358, 662 P.2d 1264 (1983); Quick v. United Benefit Life Ins. Co., 287 N.C. 74, 213 S.E.2d 563 (1975); Smith v. Todd, 155 S.C. 323, 152 S.E. 506 (1930); Metropolitan Life Ins. Co. v. Hill, 115 W. Va. 515, 177 S.E. 188 (1934); Continental Bank & Trust Co. v. Maaq, 285 F.2d 558 (10th Cir.1960) (Utah).
[5] Acquittal based on insanity; see, e.g., In Re Vadlamudi Estate, 183 N.J. Super. 342, 443 A.2d 1113 (1982); California-Western States Life Ins. Co. v. Sanford, 515 F. Supp. 524 (E.D.La. 1981). Acquittal based on self-defense: see, e.g., United States v. Burns, 103 F. Supp. 690 (D.Md. 1952), aff'd 200 F.2d 106 (4th Cir.1952); Minnesota Mutual Life Ins. Co. v. James, 202 F. Supp. 243 (D.C.Mo. 1962); Aetna Life Ins. Co. v. McDuffie, 273 F.2d 609 (6th Cir.1960).
[1] The terms of 84 O.S. 1981 § 231 provide in pertinent part:

"No person who is convicted of murder in the first degree, as defined in 21 O.S. 1971, Section 701.1, or murder in the second degree, as defined in 21 O.S. 1971, Section 701.2, subparagraph 1 or 2, or manslaughter in the first degree, as defined in 21 O.S. 1971, Section 711, subparagraph 2, under the laws of this state, or the laws of any other state or foreign country, of having taken, caused or procured another so to take, the life of an individual, shall inherit from such victim, or receive any interest in the estate of the victim, or take by devise or legacy or as surviving joint tenant, or descent or distribution, from him, or her, any portion of his or her, estate; and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization, payable upon the death or disability of any person, who in like manner takes, or causes or procures to be taken, the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate; * * *" [emphasis added]
[2] The three degrees of felonious homicide mentioned in § 231 are:

1. first degree murder, as defined in 21 O.S. 1981 § 701.1;
2. second degree murder, as defined in 21 O.S. 1981 § 701.2, subparagraphs 1 or 2; and
3. manslaughter in the first degree, as defined in 21 O.S. 1981 § 711, subparagraph 2.
[3] These doctrines stand abrogated by Art. 2 § 15, Okl.Const.; the common-law disabilities embodied in these doctrines were abolished in England by a series of statutes which culminated in 33 and 34 Vict., c. 23 [1870]. Reppy, The Slayer's Bounty  History of Problem in Anglo-American Law, XIX N.Y.U.L.Q.Rev. 229, 230-241 [1942].
[4] Reppy, supra note 3 at 245.
[5] 117 U.S. 591, 6 S.Ct. 877, 881, 29 L.Ed. 997 [1886].
[6] Reppy, supra note 3 at 245. Annot. in 70 A.L.R. 1539 and in 27 A.L.R.3d 794. See also, annot. in 25 A.L.R.4th 787. Both in the English and in the American case law the origin of the slayer's bar is ascribed to the "so-called common-law rule of public policy" which forbade one from profiting from his own wrong. Amicable Society v. Bolland, 4 Bligh [N.S.] 194, 5 Eng.Rep. 70 [1815]; Cleaver v. Mutual Reserve Fund Life Association, 1 Q.B. 147 [C.A. 1892]; Reppy, supra note 3 at 235 and 242. The rule is believed to have its antecedents in ancient maxims of general jurisprudence: No man shall take advantage of his own wrong and its Law-French and Latin counterparts  (1) Nul prendra advantage de son tort demesne; (2) Nullus commodum capere potest de injuria sua propria; (3) Jus ex injuria non oritur; (4) Nemo allegans suam turpitudinem best audiendus; and (5) Nemo ex proprio dolo consequitur actionem. See, Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, 190 [1889]; Perry v. Strawbridge, 209 Mo. 621, 108 S.W. 641, 643 [1908]; Smith v. Todd, 155 S.C. 323, 152 S.E. 506, 508 [1930]; and DeZotell v. Mutual Life Ins. Co. of New York, 60 S.D. 532, 245 N.W. 58, 59 [1932].
[7] Equitable Life Assurance Society v. Weightman, 61 Okl. 106, 160 P. 629 [1916].
[8] Duncan v. Vassaur, Okl., 550 P.2d 929, 931 [1976]. Duncan was decided on the principles of common law. The death in controversy there occurred before the 1975 amendment to § 231, by which a legal bar was included against that slayer who would seek to take as a surviving joint tenant of his victim. Okl.Sess. Laws 1975, ch. 356 at pg. 672.
[9] The terms of 12 O.S. 1981 § 2, so far as pertinent here, are:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma;...."
See McCormack v. Oklahoma Pub. Co., Okl., 613 P.2d 737, 740 [1980] and Reaves v. Reaves, 15 Okl. 240, 82 P. 490, 495 [1905].
[10] Reaves v. Reaves, supra note 9 at 495.
[11] If it were not for § 231, no homicide conviction of the slayer would serve as conclusive proof that he took the life of his victim in a felonious, intentional and unjustified manner. In re Estate of Mahoney, 126 Vt. 31, 220 A.2d 475, 479 [1966].
[12] United States v. One Assortment of 89 Firearms, ___ U.S. ___, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 [1984] and Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 2374, 76 L.Ed.2d 595 [1983].
[13] Lindsey v. Couch, 22 Okl. 4, 98 P. 973, 976 [1908]; Central Light & Fuel Co. v. Tyron, 42 Okl. 86, 140 P. 1151, 1152 [1914]; Brown v. St. Louis & S.F. Ry. Co., 158 Okl. 31, 12 P.2d 528, 529 [1932]; Gray v. Abboud, 184 Okl. 331, 87 P.2d 144 [1939]; Missouri, Kansas & Oklahoma Coach Lines v. Meister, Okl., 330 P.2d 579, 581-582 [1958]; Lewis v. Crystal Gas Company, Okl., 532 P.2d 431, 433 [1975].
[14] Delgado v. Rivera, 40 N.M. 217, 57 P.2d 1141, 1148 [1936].
[15] The three public offences enumerated in § 231 are presently the only degrees of felonious homicide in our Penal Code which meet the common-law criteria for imposition of the slayer's bar. See, In re Estate of Mahoney, supra note 11, 220 A.2d at 478 and Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118 [10th Cir.1979], cert. denied 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75.