**UNITED PRESIDENTIAL LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**Lisa MOSS, Defendant,**

**and**

**Willie Wright and Ruth Wright, Guardians of the Estate of Brandon Michael Moss, a Minor, Appellants,**

**and**

**Joyce Burkhart, Appellee.**

**No. 76264.**

Court of Appeals of Oklahoma, Division No. 3.

Feb. 25, 1992.

Rehearing Denied April 21, 1992.

Certiorari Denied Oct. 26, 1992.

James P. Lynam, Shawnee, for appellants.

Larry J. McMains, Seminole, for appellee.

## MEMORANDUM OPINION

HANSEN, Vice–Chief Judge:

This is an appeal from the trial court's order granting Summary Judgment in favor of Appellee, Joyce Burkhart (Burkhart), and denying the Motion for Summary Judgment submitted by Appellants (Guardians). We affirm.

This action was initiated by United Presidential Life, asking that it be allowed to interplead the proceeds of an insurance policy written on the life of Lanny M. Moss, deceased. The potential beneficiaries are: Lisa Moss, the primary beneficiary and surviving spouse of Lanny Moss; Brandon Moss, the Moss's sole surviving child and Joyce Burkhart, Lanny's mother, who is the contingent beneficiary.

After Answers were filed by Burkhart and the former guardian of Brandon Moss, the trial court found the life insurance proceeds had been paid into court and entered an order discharging United Presidential Life. It reserved the issue of who was the beneficiary of the policy. The order further found Lisa Moss to be in default.

In a Cross–Petition, Burkhart alleged Lisa Moss had murdered Lanny Moss, and was then confined, having been charged with the murder. Burkhart contended Lisa Moss was therefore precluded from benefitting under the insurance policy pursuant to 84 O.S.1981 § 231 (hereafter § 231),[1] which states in pertinent part:

> ... no beneficiary of any policy of insurance ..., payable upon the death ... of any person, who ... takes, or causes or procures to be taken, the life upon which such policy ... is issued, ..., shall take the proceeds of such policy ..., but in

---

1. § 231 is commonly referred to as the "slayer statute". This section, and its predecessor statutes, have remained substantively the same since enactment in 1915. Only the precluding wrongful acts have been further defined by amendment.

every instance mentioned in this section all benefits that would accrue to any such person upon the death ... of the person whose life is thus taken, ..., shall become subject to distribution among the other heirs of such deceased person according to the laws of descent and distribution ...,

Lisa Moss answered Burkhart's cross-petition, and filed her own cross-petition. She contended the policy provided Burkhart, the contingent beneficiary, could only take if the primary beneficiary failed to survive the insured. Lisa Moss noted she had survived the insured, and because she had not been convicted of her husband's murder, was not barred by § 231.[2] She argued the insurance proceeds should be paid to her, or alternatively, should be distributed to her son, Brandon Moss, according to § 231, as the sole "other" heir according to the laws of descent and distribution. See, 84 O.S.Supp.1985 § 213.

Burkhart and Guardians filed motions for summary judgment. Burkhart argued she, as contingent beneficiary, rather than the estate of the deceased, had the superior right to the insurance proceeds where the primary beneficiary was disqualified by § 231. Guardians asserted § 231 requires distribution of the insurance proceeds according to the laws of descent and distribution, irrespective of the contingent beneficiary expressly designated in the policy. The trial court found Burkhart's claim as contingent beneficiary superior to the claims of Guardians, and granted her motion for summary judgment. Guardians appeal from that order.

■ Guardian's brief on appeal contains four propositions. However, the appeal is premised essentially on two contentions. The first is that a clear reading of § 231 dictates payment to the deceased's heirs when the primary beneficiary is precluded by wrongdoing from taking the insurance proceeds. The second contention is that the terms of the insurance policy provide for payment to the contingent beneficiary only when the primary beneficiary prede-

ceases the insured. We find both contentions arguable, but unpersuasive.

Guardians assert the "whole and only purpose of [§ 231] is to protect the right of the children and heirs of a murder victim such as Lanny Moss". They cite *State Mutual Life Assurance Company of America v. Hampton*, 696 P.2d 1027 (Okla.1985), in support of this assertion. Guardians reliance on *Hampton* is misplaced. Although the Supreme Court in *Hampton* held the insurance proceeds would be distributed in accordance with § 231 if the primary beneficiary was found to be barred from taking, there was no contingent beneficiary named in the policy. *Hampton* is instructive, however, in its recognition that § 231 is an extension of the common law, and not a limitation or abrogation of that rule.

It has long been the rule in common law that:

It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken.

*Mutual Life Insurance Company v. Armstrong*, 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997 (1886).

Oklahoma recognized this principle in *Equitable Life Assurance Society v. Weightman*, 61 Okl. 106, 160 P. 629 (1916). While the parties rights in *Weightman* had accrued before the effective date of the predecessor statute to § 231, the Supreme Court expressly noted the law's existence and prospective application. The *Weightman* court, at 634, found a resulting or constructive trust in the deceased's estate if:

... the insured be murdered by his beneficiary, ..., *the policy and the law not specifically providing an alternative beneficiary*, ...

It is clear this early court contemplated giving effect to the express desires of the insured, had a contingent beneficiary been named in the policy. In discussing the recently enacted "slayer statute", the court

---

**2.** Lisa Moss was subsequently convicted in the   death of Lanny Moss.

noted it would pertain "in such a case as this"—that is, where there was no contingent beneficiary. *Weightman*, 160 P. at 631.

We find the Legislature's intent, in enacting a "slayer statute", was not to protect heirs as Guardians assert, but to codify the common law rule which disqualified one who wrongfully took the life of another from benefitting by his own wrongdoing. We have been presented with nothing to convince us there was any intention to obviate the insured's right to direct who was to benefit from his or her contractual rights.

In providing for distribution of assets according to the laws of descent and distribution, the Legislature, in § 231, only delimited "benefits that would accrue to *any such person*". (emphasis added). Such "persons" are those who take, or procure to be taken, the life of the insured. It would be incongruous to argue that one who takes the life of the insured may not benefit directly from the proceeds, but may, by the same wrongful act, indirectly dictate how those proceeds are to be distributed. Contra,: *Dowdell v. Bell*, 477 P.2d 170 (Wyo.1970).

■ Similarly, Guardian's second premise lacks support. The insurance policy in question provides for the proceeds to go to the contingent beneficiary if "no primary beneficiary survives". Lisa Moss is the only named primary beneficiary and Joyce Burkhart is the only named contingent beneficiary.

Guardians argue Lisa Moss may be barred from receiving the insurance proceeds, but she nonetheless "survives". Guardians further argue Burkhart is thus prevented by the terms of the insurance contract itself from taking the proceeds.

This Court, under similar facts, has given effect to a provision directing payment to the contingent beneficiary. *National Home Life Assurance Company v. Patterson*, 746 P.2d 696 (Okla.App.1987). Additionally, where the primary beneficiary takes the life of the insured and is barred from recovering, a majority of jurisdictions have held insurance proceeds should be paid to the contingent beneficiary, even though the policy provides that the primary beneficiary must predecease the insured. Annot., 27 A.L.R.3d 794 (§ 17) (1969).

The rationale for such an approach is well set out by Professor Keeton:

> The preferable rule, well supported by precedents, is that the proceeds will be distributed as if the slaying beneficiary had predeceased the insured. .... Ordinarily the policy does not expressly cover this situation, since it says only that the contingent beneficiary will take if the primary beneficiary predeceases the insured. But the result desired by the insured in a situation closely analogous to the case of disqualification is expressed, and that result is the one that the insured probably would have chosen had he faced this question.

R. KEETON, BASIC TEXT ON INSURANCE LAW § 4.11(g)(3) (1971).

The Supreme Court of California, in deciding a case with similar competing interests between a designated contingent beneficiary and the estate of the deceased insured, gave effect to policy terms. The Court based the decision on its finding the primary beneficiary's disqualification was the "only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death". *Beck v. West Coast Life Insurance Company*, 38 Cal.2d 643, 241 P.2d 544 (1952). We agree with the California Court that the statutory or common law rule barring recovery by the wrongdoing primary beneficiary should not be invoked is such a way as to prejudice the rights of the contingent beneficiary. *Beck*, 241 P.2d at 547.

Finding no error in the trial court's order giving Burkhart's claim priority over the claim of Guardians, that order is

AFFIRMED.

HUNTER and JONES, JJ., concur.